# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**EDGAR D. ENCISO,**

                Plaintiff,

      -vs-

                                      **Case No. 11-C-722**

**TALGO, Inc., a wholly-owned subsidiary of
PATENTES TALGO, S.L.,**

                Defendant.

---

## DECISION AND ORDER

---

In July, 2009, Governor Jim Doyle announced that the State of Wisconsin would purchase two fourteen-car high-speed passenger trains manufactured and assembled by Talgo, Inc., a Seattle corporation wholly-owned by Patentes Talgo, S.L., a train manufacturer and servicer located in Madrid, Spain.  In discussions surrounding the purchase, Talgo pledged to locate an assembly and production facility in Milwaukee, Wisconsin.  The plaintiff, Edgar Enciso, was hired as the Human Resources Manager to assist with the hiring necessary for the Milwaukee plant, but he was fired just two and a half months after accepting the job.  Enciso alleges that Talgo terminated his employment in retaliation for opposing age and national origin discrimination.  Talgo moves for summary judgment.

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The plain language of the rule "mandates the

entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must accept as true the evidence of the nonmovant and draw all justifiable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate only if, on the record as a whole, a rational trier of fact could not find for the non-moving party. *Rogers v. City of Chi.*, 320 F.3d 748, 752 (7th Cir. 2003).

The premise for a Title VII retaliation claim is statutorily protected activity, which is either opposition to an act or practice that is unlawful under Title VII or participation within an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a). Talgo argues that Enciso did not engage in any statutorily protected activity because he never filed a formal complaint of discrimination. However, an informal complaint can constitute protected "opposition" activity for purposes of a retaliation claim. *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009); *see also Davis v. Time Warner Cable of S.E. Wis., L.P.*, 651 F.3d 664, 674 (7th Cir. 2011).

Upon being hired, Enciso encountered a prevailing negative attitude towards current and potential future employees who were either old or non-Spaniard. Enciso resisted this attitude by insisting that nationality and age could not be considered when making employment decisions, particularly during the hiring process for the new plant

in Milwaukee. For example, Enciso clashed with Antonio Perez, Talgo's President and CEO, and Javier Rodriguez Palomo, the Factory Manager in Milwaukee, over whether a particular candidate should be hired because he was over the age of thirty. Enciso repeatedly told Palomo that it was unlawful in the United States to make a decision on candidates based on their age. ECF No. 81, Plaintiff's Proposed Findings of Fact, ¶ 49. Enciso also refused to comply with Talgo's request not to hire any team leaders who were over the age of thirty. *Id.*, ¶ 53. This was enough to put Talgo's management structure on notice that Enciso opposed Talgo's illegal employment practices. *See, e.g., Casna* at 426 (plaintiff's oral complaint, "Aren't you being discriminatory?" was a protected activity).

Under the direct method of proof, Enciso can survive summary judgment by providing either direct or circumstantial evidence that a causal link existed between his protected expression and his termination. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012). Enciso can demonstrate this causal link through the use of direct and/or circumstantial evidence. *Sylvester v. SOS Children's Vills. Ill., Inc.*, 453 F.3d 900, 902 (7th Cir. 2006). Direct evidence is typically an outright admission by the decisionmaker that the challenged action was undertaken for a forbidden reason. *Dass v. Chi. Bd. of Educ.*, 675 F.3d 1060, 1071 (7th Cir. 2012). In the absence of direct evidence, Enciso can use circumstantial evidence to construct a "convincing mosaic" that would permit a jury to infer intentional discrimination. *Perez v. Thorntons, Inc.*, 731 F.3d 699, 710 (7th Cir. 2013).

Such evidence may include suspicious timing, ambiguous statements or behaviors, evidence, statistical or otherwise, that similarly situated employees were treated differently, or a pretextual reason for an adverse employment action. *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643-44 (7th Cir. 2013).

The timing of Enciso's termination was extremely suspicious. Enciso was hired to staff the newly-forming Talgo plant in Milwaukee. Once that process started, Enciso ran into numerous issues with the people he was working with concerning their discriminatory attitude towards older, non-European job candidates. Enciso was terminated soon thereafter, just before the second round of interviews was scheduled to begin. This, combined with other evidence concerning the environment and culture at Talgo, creates a convincing mosaic of discriminatory animus. For example, Nicole Roessling, a human resources employee, told Enciso that she was afraid of losing her job as a result of an exchange between herself and Gemma Rodenas, a Spanish employee, that she had seen how non-Spaniard employees were treated worse than Spaniard employees, and that Enciso needed to be careful because the Spaniards were receiving special treatment. Enciso relayed this information to his boss, Chief Financial Officer George Hlebechuk, who told Enciso not to investigate claims of discrimination in favor of Spaniards. Later, Hlebechuk asked Enciso whether he was with them or against them (Hlebechuk denies making this comment, PPFF, ¶ 57). All of this points directly towards a discriminatory motive for Enciso's termination. Talgo argues that Enciso was fired for poor work performance, but the foregoing

demonstrates that a jury could "reasonably conclude" that Talgo "acted for reasons other than its stated reason." *Coleman v. Donahoe*, 667 F.3d 835, 861 (7th Cir. 2012). Under the direct method, once a plaintiff produces evidence that "points directly to a discriminatory reason for the employer's action," a motion for summary judgment "necessarily must fail." *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 n.3 (7th Cir. 2011).

Talgo's motion for summary judgment [ECF No. 72] is **DENIED**. The Court will conduct a telephonic status conference on **Wednesday, April 29, 2014** at **9:30 a.m. (CST)**, the purpose of which will be to schedule this matter for trial.

Dated at Milwaukee, Wisconsin, this 1st day of April, 2014.

BY THE COURT:

HON. RUDOLPH T. RANDA
U.S. District Judge