**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

**EDGAR D. ENCISO,**

        Plaintiff,

   **-vs-**

                                           **Case No. 11-C-722**

**TALGO, Inc.,**
**a wholly-owned subsidiary of**
**PATENTES TALGO, S.L.,**

        Defendant.

## DECISION AND ORDER

This matter comes before the Court on various motions in limine filed by the defendant, Talgo, Inc., in advance of trial, scheduled to begin on September 8.

1. Talgo moves to preclude plaintiff from testifying about statements made to him by Nicole Roessling under the hearsay rule. Fed. R. Evid. 802. The Court specifically addressed Ms. Roessling's statements when it denied Talgo's motion for summary judgment:

> Nicole Roessling, a human resources employee, told [the plaintiff, Edgar] Enciso that she was afraid of losing her job as a result of an exchange between herself and Gemma Rodenas, a Spanish employee, that she had seen how non-Spaniard employees were treated worse than Spaniard employees, and that Enciso needed to be careful because the Spaniards were receiving special treatment. Enciso relayed this information to his boss, Chief Financial Officer George Hlebechuk, who told Enciso not to investigate claims of discrimination in favor of Spaniards.

ECF No. 86, April 1, 2014 Decision and Order at 4; 2014 WL 1338809. Ms.

Roessling's statements to Enciso are not being offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c)(2). Instead, they are being offered to establish that the statements were made and had an effect on Enciso — i.e., that Enciso heard this information and repeated it to Hlebechuk. *Cooper-Schut v. Visteon Auto Sys.*, 361 F.3d 421, 430 (7th Cir. 2004).

Talgo also moves to preclude Enciso's testimony that his successor, Grace Hatton, resigned her position because of Talgo's discriminatory practices. Enciso Dep. 79:7-25 ("She indicated to me that the reason why, the main reason why she resigned her position is because they were, Palomo and the others from Spain, they wanted to implement some illegal HR practices, and she disagreed with it"). Enciso concedes that this evidence is hearsay that doesn't qualify for an exception under Rule 803 or 804. Instead, Enciso argues that it should be admitted under Rule 807, the so-called residual exception. To qualify for this exception, the hearsay at issue must satisfy five elements: (1) circumstantial guarantees of trustworthiness; (2) materiality; (3) probative value; (4) the interests of justice; and (5) notice. *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 631 (7th Cir. 2006). Courts narrowly construe the residual exception to the hearsay rule. *Id.*; *United States v. Sinclair*, 74 F.3d 753, 759 (7th Cir. 1996) ("Congressional commentary on the exception indicates that courts should define these conditions narrowly so that they do not use the exception as a way of dramatically revising the hearsay rule").

Enciso argues that this evidence is trustworthy because it is corroborated by

Hlebechuk, who testified that Hatton left because she was "frustrated working with Javier Palomo." Hlebechuk Dep. at 30-31. Hlebechuk's testimony does not fully corroborate Hatton's statement. At best, Hlebechuk's testimony is equivocal regarding the source of Hatton's frustration with Palomo; it does not lend support for the theory that Hatton, like Enciso, observed discriminatory employment practices while employed at Talgo. Therefore, Enciso's testimony about the reasons for Hatton's departure will be excluded because Enciso failed to "rebut the presumption of unreliability by appropriate proof of 'trustworthiness.'" *United States v. Hall*, 165 F.3d 1095, 1110 (7th Cir. 1999).

2. Talgo moves to preclude Enciso's testimony about how employees from Talgo's parent company, Patentes Talgo, illegally came to the United States on tourist visas to assist with the hiring process for the Milwaukee location. This evidence is relevant to the practice, alleged by Enciso, of giving preferential treatment to Spanish employees. Nor is the evidence unduly prejudicial, because if Talgo turned a blind eye or helped conceal this type of illegal activity, Enciso's arguments about the so-called "Spanish way" become more plausible. Talgo's hearsay argument also lacks merit because Enciso's testimony is based upon personal knowledge, not an out-of-court statement from a non-testifying declarant.

3. Talgo moves to preclude Lars Malleis, an On-Board Technician at Talgo, from testifying at trial. Talgo argues that Malleis' testimony is irrelevant because it largely relates to Malleis' long-standing feud with his supervisor, Richard

Vila. Once again, Malleis' testimony about Vila relates to the so-called "Spanish way" and the preferential treatment given to Spanish employees at Talgo. For example, Malleis testified that when he questioned Vila about why he would not give non-Spaniards excellent ratings, Vila said "It's not the Spanish way to recognize the individual. It's only to recognize the group." Malleis Dep. at 54. This testimony is relevant to Enciso's theory that Talgo discriminated against non-Spanish, non-European employees, a practice which Enciso opposed, resulting in his termination. Malleis' testimony is relevant and will not be excluded.

4. Talgo moves to bar Enciso's claim for punitive damages. Punitive damages are available under 42 U.S.C. § 1981a(b)(1) if the plaintiff satisfies three requirements. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999). First, the plaintiff must show that the employer acted with "malice" or "reckless indifference" towards the employee's rights under federal law. *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 835 (7th Cir. 2013). Second, the plaintiff must establish a basis for imputing liability to the employer based on agency principles. *Id.* Third, when a plaintiff imputes liability to the employer through an agent working in a managerial capacity in the scope of employment, the employer has the opportunity to avoid liability for punitive damages by showing that it engaged in good-faith efforts to implement an anti-discrimination policy. *Id.*

This aspect of Talgo's motion reads like a repeat of its motion for summary judgment. The Court already held that Enciso has enough evidence to take his case to

a jury; why would it be any different with respect to his claim for punitive damages? Enciso created an issue of fact as to whether Hlebechuk, serving in a "managerial capacity" while "acting in the scope of employment," *Kolstad*, 527 U.S. at 543, "knew of or [was] familiar with the anti-discrimination laws" but nonetheless ignored them when he fired Enciso. *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 858 (7th Cir. 2001). Talgo argues that it cannot be liable for punitive damages because it engaged in "good-faith efforts to implement an anti-discrimination policy," but this is a "fact-intensive analysis, and 'although the implementation of a written or formal anti-discrimination policy is relevant to evaluating an employer's good faith efforts . . ., it is not sufficient in and of itself to insulate an employer from a punitive damages award." *AutoZone*, 707 F.3d at 835 (quoting *Bruso*, 239 F.3d at 858).

  5. Finally, Talgo moves to bar evidence of emotional distress, arguing that Enciso offered no specific facts that would warrant an instruction on this issue. To the contrary, Enciso offered testimony regarding emotional toll that resulted from losing his job. *See, e.g.,* Enciso Dep. at 17 ("I had to return to Minnesota without a job, and that took a tremendous toll emotionally to . . . understand the reason why we're going back after . . . I had put so much time and effort in making sure that . . . I was doing my job to the best of my ability"). Talgo cites *Avitia v. Metro. Club of Chi., Inc.*, 49 F.3d 1219 (7th Cir. 1995), which held that an award of $21,000 for emotional distress is "too much for a moment's pang of distress at being fired," *id.* at 1229, but Enciso has evidence to demonstrate that he suffered more than a momentary pang, and

in any event, *Avitia* dealt with a challenge to the amount of the award, not whether the plaintiff can submit a claim to the jury in the first instance.

Talgo's motions in limine [ECF No. 89] are **GRANTED-IN-PART** and **DENIED-IN-PART**, consistent with the foregoing opinion.

Dated at Milwaukee, Wisconsin, this 5th day of August, 2014.

**BY THE COURT:**

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**